[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a suit on a promissory note made payable to Atlantic Financial Federal, later known as Atlantic Financial Savings, F.A., and which eventually was assigned by the Resolution Trust Corporation as Receiver for Atlantic Federal Savings, F.A., to the plaintiff. The note is dated December 27, 1985, is in the face amount of $26,000, and was to be paid in twenty quarterly payments, including interest, costs and attorney's fees in the event of default. The plaintiff claims a balance due of principal in the amount of $ 12,983.79 and interest of $13,171.81 for a total balance due of $26,155.68 plus costs and attorney's fees.
In defense to this claim, the defendants allege that the action is barred (1) by the statute of limitations; (2) by the doctrine of laches; and (3) because the signatures on the note are not those of the defendants but are forgeries. The parties' briefs are expansive on the issues of the statute of limitations and laches, with particular emphasis on just which statute of limitations governs this action. The plaintiff claims that the matter is governed by the provisions of the Financial Institutions Reform, Recovery and Enforcement Act.12 U.S.C. § 1821(d)(14); and thus, the action was instituted in a timely action against the defendants. The defendants claim otherwise and in addition argue that the plaintiff, or his predecessors, were guilty of laches and therefore the note is unenforceable. The court need not address these issues because the defense of forgery is dispositive of this case.
The defendants, a doctor and his wife, retained a certified public accountant, Mr. Harold Blum, and a bookkeeper, Mr. Conrad Isoldi, to attend to their financial affairs. Mr. Blum prepared their tax returns, both for the doctors' practice and for both individuals. He advised them on financial investments including, apparently, tax shelters. Mr. Isoldi was given the family's bills which he tended to. He would draw checks in payment of bills, and the doctor or his wife would sign the checks. The two were trusted advisers as well as friends of the defendants. However, they were never given any authority either to sign the defendants' names to checks, or to make investments for them.
The defendants deny that the signatures on the 1985 CT Page 11194 promissory note, the subject of this suit, are theirs. They both so testified and there was no evidence whatever to the contrary. There seems to be little dispute that the signatures are forgeries.
In or about June, 1988, Isoldi wrote and presented to the defendant Ann Marie Chiaramonte, a check for her signature payable to "Atlantic Financial" in the amount of $10,086.17. Before signing, Mrs. Chiaramonte asked Isoldi what the amount was for, and he responded that it was for "tax shelter — you owe the money." After direction from her husband, she signed the check. She testified that she did not know of the existence of a promissory note to Atlantic Financial, and believed she was paying for a tax shelter. The evidence in the case is substantial that she and Dr. Chiaramonte did not learn of the existence of a promissory note until February, 1990, when they received a demand letter from a lawyer.
Thus, this case resolves itself into two issues, (1) whether the forged signatures are a valid defense to the plaintiff's claim, and (2) if so, did the defendants ratify the unauthorized signatures by their June, 1988 payment to the plaintiff's predecessor. The issues are controlled by the provisions of the Uniform Commercial Code ("UCC"), and relying thereon the court, as an initial matter concludes that the defense of forgery is available to the defendants against the plaintiff's claim. An "unauthorized signature", as that phrase is used in the UCC, "means one made without actual, implied or apparent authority and includes a forgery." C.G.S. § 42a-1-201(43). An unauthorized signature is ineffective. C.G.S. § 42a-3-403[1]. SeeHartford Accident Indemnity Co. v. South Windsor Bank Trust,Co., 171 Conn. 63, 68, 368 A.2d 76 (1976). The evidence in this case is that the defendants' signatures on the promissory note are unauthorized. Although there was never any direct proof that either Mr. Blum or Mr. Isoldi signed the defendants' names to the notes, the inference of that is strong, and there was in fact no evidence at all that the signatures were genuine. The defendants presented evidence, through testimony, that neither these employees, or anyone else, had actual authority to borrow money on their behalf or to sign their names to negotiable instruments. Neither was there anything to suggest that Blum and/or Isoldi had implied or apparent authority to do so. "Unless otherwise agreed, an agent is not authorized to execute or endorse negotiable paper unless such execution or endorsement is usually incident to the performance of the acts which he is authorized to perform for the CT Page 11195 principal." Hartford Accident Indemnity Co. v. South WindsorBank Trust, Co., supra, 68.
The signatures of the defendants on the instrument in question being forgeries, and therefore by definition unauthorized; C.G.S. § 42a-1-201(43); the signatures are ineffective; C.G.S. § 42a-3-403; and the plaintiff cannot recover unless other provisions of the UCC provide.[2]
The second issue, then, is whether the defendants ratified the execution of the note.[3] Even a forged signature may be ratified. "An unauthorized signature may be ratified for all purposes of this Article". C.G.S. § 42a-3-403(a). "As a general rule, ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account. . . . Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances. (Citation omitted; internal quotation marks omitted), CommunityCollaborative of Bridgeport, Inc. v. Ganim, 241 Conn. 546, 561,698 A.2d 245 (1987). "Ratification means the adoption by a person, as binding upon himself, of an act done in such relations that he may claim it as done for his benefit, although done under such circumstances as would not bind him except for his subsequent assent; as where an act was done by a stranger having at the time no authority to act as his agent, or by an agent not having adequate authority. The acceptance of the results of the act within an intent to ratify, and with full knowledge of all the material circumstances, is a ratification." Hartford Accident Indemnity Co. v. South Windsor Bank Trust, Co., supra,171 Conn. 72; Ansonia v. Cooper, 64 Conn. 536, 544, 30 A. 760 (1894). The plaintiff's claim is that in issuing the check in June of 1988 to the plaintiff's predecessor, the defendants ratified the signatures on the 1985 promissory note. However, the agents of the defendants were not authorized to borrow money on the defendants' behalf, or to execute notes, or to sign the defendants' signatures on any documents. Although the defendants were aware that they owned tax shelters, there was no evidence that either defendants knew that the June, 1988 check was in payment of any promissory note. The check in question was written by Isoldi and presented to Mrs. Chiaramonte for signature. When she inquired of him what it was for, the answer was simply "tax shelter — you owe the money." She was directed by her husband to sign the check, but there was no evidence that he knew, any more than she, that it was payment on account of a CT Page 11196 promissory note. In fact, the evidence is that the defendants' first knowledge of the existence of the promissory note was in February, 1990, some one and one-half years later, when they received a demand letter from a lawyer. They were never told by Isoldi or Blum that they had signed the defendants' signatures on the note, and it can be reasonably inferred that the defendants first learned of the unauthorized signatures when they saw a copy of the note which could not have been before February, 1990. It is clear that the defendants did not accept ". . . . the results of the act with an intent to ratify, and with full knowledge of all the material circumstances." Community Collaborative ofBridgeport, Inc. v. Ganim, supra, 561. They knew nothing about the promissory note, its amount, interest rate or term, nor did they know their signatures had been forged by Blum, or Isoldi, or by others. There is insufficient evidence to find that the defendants ratified the forgeries. Since the plaintiff cannot succeed in suing on the forged instrument, judgment must enter for the defendants.
So Ordered.
D'ANDREA, J.