[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT
Presently before this court is the defendant's supplemental motion for summary judgment, filed on October 28, 2002. The plaintiffs are Constantinos Sotirio, Ilan Kinori, Anthony Schwartz, and Bill Gouveia, parties involved in a sale of property known as 31 Hillside Avenue, Milford, Connecticut (the property). The defendant is Washington Mutual Bank (Washington), the holder of a mortgage on the property at the time of the sale. This case arises out of the plaintiffs' attempt to recover damages for Washington's failure to issue a release of a mortgage as required by § 49-8 (c).[1]
The facts, most of which have been stipulated to, do not appear to be in dispute.[2] In August 1995, Sotirio, the property owner at the time, granted Great Western Bank a mortgage on the property. The mortgage was promptly recorded on the land records of the City of Milford in Volume 2136, at page 193. Washington subsequently acquired the mortgage through a merger with Great Western Bank.
On March 24, 1999, Sotirio closed on a sale of the property by warranty deed to Kinori. Sotirio, however, had not paid off the mortgage by the closing date. Schwartz, Sotirio's attorney, therefore agreed to indemnify both Kinori and his attorney, Gouveia, against any claim related to Washington's failure to release the mortgage. Gouveia, as an agent for First American Title Insurance Company, also issued a title insurance policy to Kinori.
On March 29, 1999, Schwartz sent Washington a check for $134,968.91, the payoff amount on the mortgage. Included with the check was a cover letter requesting that Washington issue a release of the mortgage. Nevertheless, when Kinori entered into a contract to sell the property in June 2001, he discovered that a release had never been recorded on the Milford Land Records. Washington, in response to further requests to issue a release, finally did so on July 9, 2001. CT Page 15334-bg
Based on these facts, the plaintiffs filed an eight count complaint on December 4, 2001. Counts one, three, five, and seven seek damages for Washington's alleged failure to release the mortgage in the period prescribed by General Statutes § 49-8 (c). Counts two, four, six, and eight seek damages for Washington's alleged violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[3] Counts one and two are filed by Sotirio, counts three and four by Kinori, counts five and six by Schwartz, and counts seven and eight by Gouveia.
On December 17, 2001, each plaintiff filed a formal offer of judgment in the amount of $4,950.00. Ten days later, on December 27, 2001, Washington accepted the offer of judgment filed by Sotirio, but did not accept the offers made by the remaining plaintiffs. Judgment entered as to counts one and two on January 7, 2002.
On March 1, 2002, the defendant filed an answer and two special defenses as to the remaining six counts. The first special defense alleges that § 49-8 (c) expressly limits damages for the failure to release a mortgage to $5,000, thereby releasing Washington from any liability to the remaining plaintiffs. The second special defense alleges that none of the remaining plaintiffs are "aggrieved" under § 49-8
(c)
The remaining plaintiffs moved for partial summary judgment on counts three, five, and seven. In response, Washington filed an objection to the motion of the remaining plaintiffs and a cross motion for summary judgment. As to counts three, five, and seven, the court, Curran, J.T.R., granted the defendant's cross motion and denied the plaintiffs' motion on the ground that the remaining plaintiffs were not "aggrieved" under § 49-8 (c).
The defendant now moves for summary judgment as to counts four, six, and eight. The plaintiffs have not filed any opposition to the motion.
"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries,Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527, 550, 791 A.2d 489
(2002). "[A]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing CT Page 15334-bh summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact. are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Id.
In support of its motion for summary judgment, the defendant argues that the remaining plaintiffs lack standing to assert claims under CUTPA because their injuries, if any, are indirect and derivative. This court finds the defendant's argument persuasive.
"As we have held repeatedly, the power to determine its jurisdiction is one of the core inherent powers of a court. [O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Community Collaborative of Bridgeport, Inc. v. Ganim,241 Conn. 546, 552, 698 A.2d 245 (1997).
"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) Ganim v. Smith Wesson Corp., 258 Conn. 313, 347, 780 A.2d 98 (2001).
"[I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendants conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. Where, for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." Id., 347-48.
"The question of whether a set of harms suffered by the plaintiff is the direct, or the indirect, remote or derivative, consequence of the defendant's conduct, is not determined, however, simply by the court applying one set of labels or the other to the facts of the case. It is, instead, part of the judicial task, based on policy considerations, of setting some reasonable limits on the legal consequences of wrongful CT Page 15334-bi conduct. In this respect, it is akin to, if not precisely the same as, the judicial task of determining whether a tortfeasor owes a duty to one who has been injured, albeit indirectly, by the tortfeasor's conduct. In that respect, we have stated: [W]e recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff as entitled to protection. While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citations omitted.) Id., 349.
With respect to the issue of standing in CUTPA actions, our Supreme Court identified "three policy factors to guide courts in their application of the general principle that plaintiffs with indirect injuries lack standing to sue. . . . First, the more indirect an injury is, the more difficult it becomes to determine the amount of plaintiff's damages attributable to the wrongdoing as opposed to other, independent factors. Second, recognizing claims by the indirectly injured would require courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, in order to avoid the risk of multiple recoveries. Third, struggling with the first two problems is unnecessary where there are directly injured parties who can remedy the harm without these attendant problems." (Citation omitted; internal quotation marks omitted.) Id., 353.
Turning to the first factor, this court finds that the plaintiffs' alleged injuries are indirect. Sotirio was the mortgagor who was entitled to a release of the mortgage pursuant to General Statutes § 49-8. The defendant's failure to issue a release to Sotirio, in turn, prevented Kinori from selling the property, and caused Schwartz and Gouveia to expend time in obtaining a release of the mortgage. Thus, the injuries alleged by the remaining plaintiffs arise out of the defendant's failure to issue a release to Sotirio. Accordingly, the plaintiffs' injuries are indirect.
The second factor also counsels against allowing the plaintiffs to recover for their alleged injuries. Such recovery by Kinori would require courts to apportion damages among a mortgagor and all subsequent purchasers, who happen to incur injuries as a result of a mortgagee's failure to issue a release as required by § 49-8. Moreover, allowing attorneys representing such parties — in this case Schwartz and CT Page 15334-bj Gouveia — to seek recovery under CUTPA would only serve to further complicate any apportionment rules. Thus, the second factor counsels against such recovery.
Turning to the third factor, this court finds that Sotirio is a directly injured party who can remedy the harm without these attendant problems. In this case, Sotirio was the mortgagor who was entitled to a release of the mortgage pursuant to General Statutes § 49-8. When the defendant failed to do so, Sotirio had the right to bring an action under § 49-8, the result of which would be to cure the harms caused by the defendant and deter the defendant from continuing its conduct. Thus, the third factor weighs against permitting the remaining plaintiffs to recover under CUTPA.
Our Supreme Court recently reiterated that "it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any trade or commerce." (Internal quotation marks omitted.) Vacco v.Microsoft Corp., 260 Conn. 59, 88, 793 A.2d 1048 (2002). The court finds that the remaining plaintiff's do not have standing to seek redress under CUTPA.
The court grants the defendant's supplemental motion for summary judgment as to counts four, six, and eight.
The Court
 By ___________________ Curran, J.