MAHARISHI SCHOOL OF VEDIC SCIENCES, INC.
(CONNECTICUT) *v.* CONNECTICUT
CONSTITUTION ASSOCIATES
LIMITED PARTNERSHIP
(SC 16702)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 19—officially released July 2, 2002

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellant (plaintiff).

*Robert M. Dombroff*, with whom, on the brief, were *Ann M. Siczewicz* and *Brent L. Hoffman*, for the appellee (defendant).

*Opinion*

KATZ, J. The dispositive issue in this appeal is whether the trial court properly determined that an agent of the plaintiff, Maharishi School of Vedic Sciences, Inc. (Connecticut), had the authority to bind the

plaintiff to a settlement agreement with the defendant, Connecticut Constitution Associates Limited Partnership, and a third party, General Electric Capital Corporation (General Electric). The plaintiff appeals[1] from the judgment of the trial court rendered after the granting of the defendant's motion to summarily enforce the agreement. We affirm the trial court's judgment.

The record discloses the following undisputed facts. The plaintiff is the owner of a hotel, formerly known as the Summit Hotel, located on Constitution Plaza in downtown Hartford. The defendant owns Constitution Plaza. The plaintiff filed an amended complaint, dated November 9, 1998, against the defendant alleging a violation of an existing declaration of reciprocal easements that the defendant had executed on December 13, 1988. The complaint specifically alleged that the defendant impermissibly had interfered with the plaintiff's access to and use of 220 designated parking spaces in the defendant's garage, which is adjacent to the plaintiff's hotel. Thereafter, General Electric, the holder of a mortgage and security interest on the defendant's property, was cited in as an additional party defendant.[2]

Trial on the matter commenced on August 4, 1999, and, after two days, was suspended for evidentiary purposes. The action thereafter extended into February, 2001, after several continuances and various other legal proceedings. Contemporaneous with those proceedings, between April and December, 2000, the parties engaged in settlement negotiations. Throughout those negotiations, the plaintiff communicated through Paul Potter, its corporate secretary, and Daniel A. Wasielew-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Electric is not a party to the present appeal. References herein to the defendant are to Connecticut Constitution Associates Limited Partnership only.

ski, its directing manager. On May 15, 2000, the parties informed the court that they had reached an agreement in principle. The court continued the action for thirty days to facilitate the finalization of the agreement and the filing of a withdrawal of the case. The court scheduled a deadline for filing the withdrawal for June 16, 2000.

On or about June 13, 2000, the defendant sent the plaintiff an initial draft of the agreement consisting of a document that set forth terms for a new easement on the defendant's property and another document that contained a settlement and a release, which required the parties to record the new easement in the Hartford land records and required the plaintiff concurrently to withdraw the case. The easement expressly designated Potter, per the plaintiff's request, as the individual to receive all notices, requests and other communications on the plaintiff's behalf. On June 28, 2000, following a failure by the parties to file a timely withdrawal of the case, the court rendered a judgment of dismissal. Thereafter, negotiations between the parties continued. On August 2, 2000, following a series of telephone conversations regarding the terms of the agreement, the defendant forwarded to the plaintiff a revised draft agreement. On August 21, 2000, the parties held a meeting for the purpose of finalizing language in the agreement, but continued discussions throughout September.

On October 19, 2000, pursuant to Practice Book § 17-4 (a),[3] the plaintiff moved to open the judgment of dismissal, claiming that opening the judgment was prudent in order to maintain the option of a trial in the event that the ongoing efforts toward settlement ultimately

---

[3] Practice Book § 17-4 (a) provides in relevant part that a judgment "may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. . . ."

failed. The plaintiff acknowledged that, although the case previously had been reported to the court as having been settled, additional time was still necessary to consummate the agreement and to reduce it to writing. The plaintiff further stated that the terms of the agreement with respect to the defendant had been finalized, but that there remained an unresolved issue between the defendant and General Electric,[4] which did not implicate the plaintiff. Finally, the plaintiff advised the court that it was operating under the impression that the case was settled and that it anticipated no further court intervention once the paperwork was signed. On October 30, 2000, the trial court granted the plaintiff's motion to open the judgment of dismissal and set a new trial date.

During the negotiations, General Electric had suggested that it might be beneficial for the plaintiff to execute a corporate resolution expressly approving the terms of the agreement and granting Potter the authority to execute it on the plaintiff's behalf. James J. Nugent, the plaintiff's attorney, agreed to draft the resolution, to obtain its execution and to distribute it to the defendant, which, in turn, would forward the resolution to General Electric. On November 29, 2000, the defendant sent to Nugent a finalized draft of the settlement agreement for the plaintiff to sign. Nugent then gave the documents to Potter. Potter signed the settlement agreement and release and the easement in the presence of two witnesses and a notary, as well as an attestation that he had the authority to sign those documents on the plaintiff's behalf in his capacity as the plaintiff's secretary. Thereafter, Potter returned the signed papers to Nugent. Potter did not execute a corporate resolution.

---

[4] General Electric and the defendant were negotiating a condition in the agreement pursuant to which General Electric would subordinate its mortgage on the subject property to the new easement.

Following his receipt of the documents from Potter, Nugent informed Chad A. Landmon, the defendant's attorney, that the plaintiff had signed the agreement. Nugent and Landmon arranged to meet at Nugent's office on December 20, 2000, for the purpose of exchanging the documents. Landmon arranged with General Electric for it to send its executed signature papers to Landmon's office in time for the scheduled exchange. The plaintiff and the defendant also planned that, following the exchange, a paralegal from Landmon's office would record the new easement at the Hartford land records and the plaintiff would file a withdrawal of the action with the court that day.

On or about December 18, 2000, shortly after Potter had signed the agreement, Randall S. Koladis, the plaintiff's real estate agent, informed Potter that the economic development commission of the city of Hartford (city) was considering exercising its powers of eminent domain to take the plaintiff's property. He advised Potter to reconsider the agreement, in particular the easement, noting that it would be worthless if the city were to take the property.

Thereafter, on December 20, Nugent drove to Landmon's office for the sole purpose of exchanging the documents and consummating the settlement. Nugent brought with him the plaintiff's signed and notarized settlement and release agreement and easement, as well as the court papers required to withdraw the case. After Nugent arrived at Landmon's office, he received a voicemail from Potter instructing him not to deliver the signed papers to the defendant. The meeting subsequently was concluded without an exchange of the signed documents.

On January 22, 2001, alleging that the parties had executed a final agreement but that the plaintiff "ha[d] refused to withdraw [the] action or to provide to the

other parties the original documents containing [its] signature," the defendant moved the trial court summarily to enforce the agreement. On February 22, 2001, at the hearing on the defendant's motion, the plaintiff claimed that the agreement was unenforceable because, inter alia,[5] the parties had contemplated that Nugent would obtain a corporate resolution from the plaintiff's board of directors approving the agreement as negotiated and granting Potter the authority to sign the agreement on the plaintiff's behalf, which Nugent had failed to obtain. In the absence of that resolution, the plaintiff contended that its agents, in particular, Potter, did not have the authority to bind it to the agreement.

On the basis of the evidence and testimony presented, the trial court determined that the parties had, in fact, arrived at an agreement that was "satisfactorily clear and unambiguous."[6] The court noted that a corporate resolution had been discussed by the parties, but was never executed. Nevertheless, the trial court determined that "[n]o evidence was produced to demonstrate that, prior to December 20, 2000, Nugent or Potter acted beyond the authority granted to them by the [plaintiff]." The court reasoned that "[a] settlement agreement may be summarily enforced within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement. . . . No dispute existed between the parties at the time their counsel reached a settlement as evidenced by the executed

[5] The plaintiff additionally raised two alternate claims, namely, that if the defendant had known of the city's interest in taking the property by eminent domain before the documents were to be exchanged, the agreement would be unenforceable on grounds of fraudulent nondisclosure, and that if the defendant did not have such knowledge of the city's plans, the agreement would be unenforceable on grounds of mutual mistake. The trial court rejected both contentions. The plaintiff does not renew these claims on appeal to this court.

[6] The parties do not dispute on appeal the trial court's finding that the terms of the agreement were clear and unambiguous.

documents." (Citation omitted.) Accordingly, the trial court granted the defendant's motion to enforce the agreement and rendered judgment thereon.

On appeal, the plaintiff reiterates the claim that it articulated before the trial court. Specifically, the plaintiff contends that the parties contemplated a corporate resolution approving the agreement and authorizing Potter to sign it, and that, in the absence of that resolution, the record cannot support the trial court's determination that Potter, as the plaintiff's agent, had the authority to bind the plaintiff to the agreement. Therefore, in the plaintiff's view, the trial court improperly enforced the agreement. The defendant counters that the record demonstrates that Potter had either actual or apparent authority to bind the plaintiff to the agreement and, accordingly, the trial court properly concluded that the agreement was enforceable. We conclude that the record demonstrates that Potter had implied actual authority to bind the plaintiff to the agreement, and, therefore, that the trial court properly concluded that the agreement was enforceable.

Before we turn to the merits of the plaintiff's claim, we briefly address the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 122, 788 A.2d 83 (2002). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal

quotation marks omitted.) *State* v. *Hill*, 256 Conn. 412, 425–26, 773 A.2d 931 (2001).

It is well settled that "[t]he nature and extent of an agent's authority is a question of fact for the trier where the evidence is conflicting or where there are several reasonable inferences which can be drawn." (Internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 531, 757 A.2d 1103 (2000); see also *Czarnecki* v. *Plastics Liquidating Co.*, 179 Conn. 261, 268, 425 A.2d 1289 (1979). In the present case, the parties disputed whether Potter had the authority to bind the plaintiff to the agreement, and the trial court's determination that Potter did, in fact, have the requisite authority was central to the court's conclusion that the agreement was enforceable. Our resolution of the plaintiff's claim, therefore, depends on whether there was sufficient evidence to support the trial court's finding that Potter had the authority to settle the case on behalf of the plaintiff.

Having set forth the applicable standard of review, we turn to the merits of the plaintiff's claim. It is well settled that a corporation can act only through its agents. See, e.g., *Lieberman* v. *Reliable Refuse Co.*, 212 Conn. 661, 673, 563 A.2d 1013 (1989). Furthermore, it is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal, and within the scope of the agent's employment. See *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 70, 699 A.2d 101 (1997); *Hartford Accident & Indemnity Co.* v. *South Windsor Bank & Trust Co.*, 171 Conn. 63, 70, 368 A.2d 76 (1976). An agent's authority may be actual or apparent. *Hallas* v. *Boehmke & Dobosz, Inc.*, 239 Conn. 658, 674, 686 A.2d 491 (1997). Actual authority exists when "[an agent's] action [is] expressly authorized by resolution of the board of directors . . . [is] impliedly authorized by the board of directors . . .

or . . . although not authorized, [is] subsequently ratified by the board of directors." *Czarnecki* v. *Plastics Liquidating Co.*, supra, 179 Conn. 268. Apparent authority is that semblance of authority that a principal, through its own acts or inadvertences, causes or allows third persons to believe the principal's agent possesses. See *Hallas* v. *Boehmke & Dobosz, Inc.*, supra, 674.

In the present case, in finding that Potter had acted with authority from the plaintiff, the trial court did not specify whether that authority was actual or apparent.[7] Accordingly, we first review the findings of the trial court for sufficient evidence to support a finding of actual authority for Potter to bind the plaintiff to the agreement.

Actual authority may be express or implied. See *Czarnecki* v. *Plastics Liquidating Co.*, supra, 179 Conn. 268; see also *Connecticut National Bank* v. *Giacomi*, supra, 242 Conn. 69–70; *Hartford Accident & Indemnity Co.* v. *South Windsor Bank & Trust Co.*, supra, 171 Conn. 69. The defendant does not contend, however, that Potter had express actual authority. Our review is limited, therefore, to whether Potter had actual authority that was implied. "Implied authority is actual authority circumstantially proved. It is the authority which the principal intended his agent to possess." (Internal quotation marks omitted.) *Czarnecki* v. *Plastics Liquidating Co.*, supra, 268. "Implied authority is a fact to be proven by deductions or inferences from the manifestations of consent of the principal and from the acts of the principal and [the] agent. *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, 127 Conn. 493, 498, 18 A.2d 347 [1941] . . . ." (Internal quotation

---

[7] The plaintiff filed a motion for articulation of, inter alia, the trial court's finding regarding the nature of Potter's authority, which the trial court denied. Thereafter, the plaintiff filed a motion for review with this court. We granted the motion but denied the relief requested.

marks omitted.) *Connecticut National Bank* v. *Giacomi*, supra, 70.

Applying these principles to the present case, the following evidence supports the trial court's determination, based on the totality of the facts and circumstances, that, in the absence of the signed corporate resolution, Potter had implied actual authority from the plaintiff to bind it to the agreement.[8] The parties negotiated the agreement for nine months. During this process, it was General Electric, not the plaintiff, that suggested that it would be prudent for the plaintiff to execute a corporate resolution expressly approving the agreement and granting Potter the authority to execute the agreement. Although that resolution was never executed, at no point during the negotiations did the plaintiff behave as if that resolution were dispositive of Potter's authority to negotiate and execute the agreement. To the contrary, throughout the process, Potter was involved directly in negotiating the language of the documents. The plaintiff was aware of Potter's actions on its behalf because, in his capacity as the plaintiff's secretary, Potter communicated directly with the plaintiff's board of directors about developments in the negotiations. In addition, in the easement, which addresses the heart of the dispute between the parties underlying this appeal, Potter was designated explicitly by the plaintiff as the individual to receive all notices, requests and other communications. Moreover, Potter not only executed the agreement on the plaintiff's behalf, but he expressly averred before a notary public and two witnesses that he had the authority to do so. Thereafter, despite having neither received nor signed the corporate resolution that Potter testified was pivotal to his authority to bind the plaintiff, Potter nevertheless

---

[8] Because we conclude that there is sufficient evidence upon which the trial court could have relied to find that Potter had implied actual authority, we do not reach the issue of whether he had apparent authority.

returned the executed agreement to Nugent with full knowledge that Nugent was meeting with Landmon shortly thereafter to exchange the signed papers and to consummate the agreement.

Moreover, at no time during the nine month negotiation period, during which Potter reported his activities and the progress of the negotiations to the plaintiff's board, did the plaintiff notify either Nugent or Landmon that Potter did not have the requisite authority to close the deal. Nor was it Nugent's understanding, in his communications with the plaintiff, through both Wasielewski and Potter, that, in the absence of the corporate resolution, Potter did not have the requisite authority to bind the plaintiff. To the contrary, Nugent left his office on December 20, 2000, with the intention of meeting Landmon, exchanging what he believed to be the relevant documents, closing the deal, and filing a withdrawal with the court, without ever having received from Potter the signed corporate resolution. Indeed, the plaintiff was aware of Nugent's actions on its behalf that day, and when the plaintiff contacted Nugent after his arrival at Landmon's office to close the deal, the plaintiff took issue, not with the lack of a signed corporate resolution, but, rather, with the potential effect that a possible condemnation of its property by the city might have on the value of that agreement. Moreover, the plaintiff's last minute instruction to Nugent, through Potter, to refrain from exchanging the signed papers, evinced the plaintiff's belief that Potter's execution of those documents was binding and that the exchange of those documents would consummate the deal.

In light of this evidence, we cannot conclude that the trial court's finding that Potter had acted within his authority in executing the agreement was clearly erroneous. Because the trial court has the inherent power summarily to enforce a settlement agreement as a matter of law when, as here, the terms of the settlement

are clear and unambiguous and not in dispute; *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993); we conclude that, under the facts and circumstances of this case, the trial court properly enforced the settlement agreement.

The judgment is affirmed.

In this opinion the other justices concurred.