### ARTHUR D. MACHADO *v.* STATEWIDE GRIEVANCE COMMITTEE
### (AC 26107)

DiPentima, Gruendel and Dupont, Js.

---

Argued October 21, 2005—officially released February 21, 2006

*Arthur D. Machado*, pro se, the appellant (plaintiff).

*Maureen A. Horgan*, assistant bar counsel, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Arthur D. Machado, an attorney, appeals from the judgment of the trial court dismissing his appeal from the reprimand issued to him by the defendant, the statewide grievance committee. The defendant affirmed the decision of its reviewing committee, reprimanding the plaintiff for violating rules 1.2 (a)[1] and 1.4 (a)[2] of the Rules of Professional Conduct. On appeal, the plaintiff claims that the court improperly (1) concluded that there was clear and convincing evidence that he violated rules 1.2 (a) and 1.4 (a), (2) refused to consider an affidavit he submitted after oral arguments and (3) determined that scienter was not a requirement in finding an ethical violation. We affirm the judgment of the trial court.

The record discloses the following procedural history and relevant facts. The plaintiff is an attorney licensed by the state of Connecticut and was retained by the complainant, Scott V. Adams, to represent him in a bankruptcy proceeding. The plaintiff initially met with Adams in January, 2000, while Adams was in prison.[3]

---

[1] Rule 1.2 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued. . . ."

[2] Rule 1.4 (a) of the Rules of Professional Conduct provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] Adams remained incarcerated through the date of the reviewing committee hearing on October 1, 2002.

At the meeting, Adams instructed the plaintiff to communicate with Kendra Cihocki because, as a prisoner, Adams had limited means of communication. Subsequent to the meeting, Cihocki delivered an $850 check to the defendant as a retainer for Adams' bankruptcy filing.

Thereafter, Cihocki instructed the plaintiff to obtain the release of a sales tax lien that had been placed on a business owned by Adams and Cihocki. The plaintiff provided legal services in connection with the removal of the sales tax lien and, in so doing, depleted the retainer. Shortly thereafter, Cihocki picked up the file from the plaintiff's office and retained new counsel. No funds were left to pursue Adams' bankruptcy, and the plaintiff took no further action on the bankruptcy. Furthermore, the plaintiff did not inform Adams that he no longer was pursuing the bankruptcy proceeding on his behalf.

In August, 2000, the plaintiff decided to close his office, and he released his last staff member the following month. By March, 2001, the lease on the plaintiff's office expired. During that time, Adams attempted to contact the plaintiff by telephone and mail regarding the status of his bankruptcy.[4] Adams never received a response to his telephone messages or letters.

On March 19, 2002, Adams filed a complaint with the defendant, alleging, among other things, that the plaintiff had failed to respond to letters and telephone calls made by Adams in 2000 and 2001. Adams also claimed that the plaintiff owed him $800 because the plaintiff did not perform work on the bankruptcy as initially agreed by both parties.[5] The defendant's griev-

[4] Adams claimed that he spoke with the plaintiff's secretary, left messages and wrote a letter to the plaintiff outlining how he wanted to proceed with the bankruptcy. The plaintiff contended that he never received any telephone calls or correspondence from Adams during that time.

[5] Although Adams specified $800 as full reimbursement, the actual amount was $850, which Chiocki initially had given to the plaintiff as a retainer fee.

ance panel, after considering Adams' complaint, filed its decision on August 1, 2002, finding probable cause to believe that the plaintiff had violated rules 1.2, 1.4 (a), 1.5 (b) and 1.15 (b) of the Rules of Professional Conduct.

On October 1, 2002, a reviewing committee of the defendant conducted a hearing on Adams' complaint. Both Adams and the plaintiff testified at the hearing. On February 14, 2003, the reviewing committee issued its decision to reprimand the plaintiff for violating rules 1.2 (a) and 1.4 (a) of the Rules of Professional Conduct. On March 5, 2003, the plaintiff filed a request for review of the reviewing committee's decision, which, on March 20, 2003, the defendant affirmed.

On April 17, 2003, the plaintiff appealed to the Superior Court pursuant to Practice Book § 2-38[6] from the defendant's decision reprimanding him. On October 20, 2004, the Superior Court dismissed the plaintiff's appeal and, on November 29, 2004, denied the plaintiff's motion for reconsideration and reargument. On December 20, 2004, the plaintiff filed his appeal.

I

The plaintiff first claims that the court improperly affirmed the decision of the defendant, concluding that there was clear and convincing evidence that he violated rules 1.2 (a) and 1.4 (a) of the Rules of Professional Conduct. Specifically, the plaintiff argues that Cihocki was Adams' agent and, therefore, the plaintiff was obliged to follow her orders in assisting with releasing a sales tax lien. We are not persuaded.

We set forth the applicable standard of review pursuant to Practice Book § 2-38 (f).[7] "[I]n reviewing a deci-

---

[6] Practice Book § 2-38 (a) provides in relevant part: "A respondent may appeal to the superior court a decision by the statewide grievance committee or a reviewing committee reprimanding the respondent . . . ."

[7] Practice Book § 2-38 (f) provides: "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds

sion of the statewide grievance committee to issue a reprimand, neither the trial court nor this court takes on the function of a fact finder. Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct. . . . Additionally, in a grievance proceeding, the standard of proof applicable in determining whether an attorney has violated the [Rules] of Professional [Conduct] is clear and convincing evidence. . . . The burden is on the statewide grievance committee to establish the occurrence of an ethics violation by clear and convincing proof. . . .

"[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Ansell* v. *Statewide Grievance Committee*, 87 Conn. App. 376, 382–83, 865 A.2d 1215 (2005).

that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) in violation of constitutional, rules of practice or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the statewide grievance committee or take such other action as may be necessary. For purposes of further appeal, the action taken by the superior court hereunder is a final judgment."

Applying those principles to the facts before us, we conclude that the reviewing committee's findings, affirmed by the defendant and the court, are supported by clear and convincing evidence and that its conclusions are legally and logically correct.

First, in its February 14, 2003 decision, the reviewing committee found by clear and convincing evidence that "[Adams] retained the [plaintiff] to represent him in his bankruptcy." The reviewing committee further determined that Cihocki was indeed Adams' agent for the bankruptcy filing, but ceased being Adams' agent when she directed the plaintiff to release a sales tax lien on property owned by her and Adams. "The [plaintiff's] failure to abide by [Adams'] decision to file for bankruptcy and failure to consult with [Adams] regarding the change in the scope of representation from bankruptcy to release of a sales tax lien constituted a violation of rule 1.2 (a) of the Rules of Professional Conduct."

Second, the reviewing committee determined that the plaintiff did not keep Adams reasonably informed about the status of the bankruptcy. "By not informing [Adams] that his agent had instructed the [plaintiff] to change the scope of representation from bankruptcy to release of the sales tax lien, the [plaintiff] violated rule 1.4 (a) of the Rules of Professional Conduct."

In his brief, the plaintiff claims that Cihocki had both actual and apparent authority[8] to redirect his actions

---

[8] "Actual authority may be express or implied. . . . Implied authority is actual authority circumstantially proved. It is the authority which the principal intended his agent to possess. . . . Implied authority is a fact to be proven by deductions or inferences from the manifestations of consent of the principal . . . and [the] agent." (Citations omitted; internal quotation marks omitted.) *Maharishi School of Vedic Sciences, Inc. (Connecticut)* v. *Connecticut Constitution Associates Ltd. Partnership*, 260 Conn. 598, 607, 799 A.2d 1027 (2002).

"Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. . . . Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's

to release the sales tax lien. The plaintiff argues that Cihocki had actual authority because Adams gave her a power of attorney and told the plaintiff to follow her instructions. The plaintiff also contends that Cihocki had apparent authority because it was reasonable for him to assume that Cihocki's authority extended to the redirection of his work to encompass the sales tax lien. In support of his contention, the plaintiff lists a number of facts, including that he "spoke to Ms. Cihocki on an almost daily basis" and "spoke with Adams at his initial meeting and at least once by telephone regarding the tax liens . . . ." He also claims that "the tax liens were among the debts to be discharged in the bankruptcy . . . ." We are not persuaded by those arguments.

"It is well settled that [t]he nature and extent of an agent's authority is a question of fact for the trier where the evidence is conflicting or where there are several reasonable inferences which can be drawn." (Internal quotation marks omitted.) *Maharishi School of Vedic Sciences, Inc. (Connecticut)* v. *Connecticut Constitution Associates Ltd. Partnership*, 260 Conn. 598, 606, 799 A.2d 1027 (2002). As a reviewing court "[w]e must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . The weight to be given to the evidence and to the credibility of witnesses is solely within the determination of the trier of fact." (Citations omitted; internal

principal. . . . The issue of apparent authority is one of fact to be determined based on two criteria. . . . First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. . . . . Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." (Citations omitted; internal quotation marks omitted.) *Tomlinson* v. *Board of Education*, 226 Conn. 704, 734–35, 629 A.2d 333 (1993).

quotation marks omitted.) *Statewide Grievance Committee* v. *Dixon*, 62 Conn. App. 507, 511, 772 A.2d 160 (2001).

In the present case, the trier of fact, the reviewing committee, determined the scope of the agency relationship after reviewing evidence and hearing the testimony of both Adams and the plaintiff. We note that the committee, as the fact finder, was free to weigh the plaintiff's evidence and to determine the credibility of his testimony. The reviewing committee determined that the plaintiff failed to abide by Adams' decision to file for bankruptcy and failed to inform Adams regarding the change in the scope of representation from bankruptcy to release of a sales tax lien. Indeed, the plaintiff admitted that he was mistaken in not having a new fee agreement document prepared when Cihocki asked him to do work on the tax lien issue.[9] The plaintiff's challenge to the reprimand issued by the defendant is, therefore, without merit.

The plaintiff further argues that in accordance with rule 1.16 (a) (3)[10] of the Rules of Professional Conduct, he was discharged by Adams and therefore could not have violated rules 1.2 (a) and 1.4 (a). Specifically, the plaintiff claims he was discharged when Cihocki picked up Adams' file from the plaintiff's office and retained new counsel. The plaintiff's argument is without merit.

As discussed, the reviewing committee found by clear and convincing evidence that Cihocki no longer was Adams' agent when she directed the plaintiff to work on the release of a sales tax lien. In addition, the court noted that the plaintiff's failures to abide by Adams'

[9] According to the plaintiff, Adams had signed at flat fee retainer agreement in connection with a chapter 7 bankruptcy petition.

[10] Rule 1.16 (a) of the Rules of Professional Conduct provides in relevant part: "Except as stated in subsection (c), a lawyer shall not represent a client . . . if . . . (3) [t]he lawyer is discharged. . . ."

decision to file for bankruptcy and to consult with Adams regarding the change in the scope of representation occurred prior to the removal of the file from the plaintiff's office. Even if the plaintiff was discharged when the file was picked up, the plaintiff already had violated rules 1.2 (a) and 1.4 (a).

Under those circumstances, we conclude that the reviewing committee's findings, affirmed by the defendant and the court, are supported by clear and convincing evidence, and that the conclusion that the plaintiff violated rules 1.2 (a) and 1.4 (a) of the Rules of Professional Conduct is legally and logically correct. Accordingly, we affirm the judgment upholding the defendant's decision to reprimand the plaintiff.

## II

The plaintiff's second claim is that the court improperly refused to consider an affidavit, executed by Cihocki, that was submitted by the plaintiff after the court hearing.

The following additional facts are relevant to the plaintiff's claim. After hearing the oral arguments of Adams and the plaintiff on September 15, 2004, the court stated that it considered the matter to be fully submitted. Nonetheless, On September 17, 2004, the plaintiff submitted what he termed "supplementary material in support of [his] appeal," including an affidavit from Cihocki also dated September 17, 2004. The affidavit stated, among other things, that Cihocki had a power of attorney from Adams, but that it was lost.

In its October 20, 2004 decision, the court stated that it would not consider Cihocki's affidavit in deciding the plaintiff's appeal from the defendant's decision. Citing *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 234, 578 A.2d 1075 (1990), the court noted that an appeal from the decision of the defendant is normally

limited to a review of the record. Furthermore, the court stated that "Practice Book § 2-38 (d) provides, in pertinent part, 'The appeal shall be conducted by the court without a jury and shall be confined to the record. If alleged irregularities in procedure before the statewide grievance committee or reviewing committee are not shown in the record, proof limited thereto may be taken in the court.' "

In his appeal to the court, the plaintiff did not argue that a procedural irregularity occurred. In his appeal to this court, however, the plaintiff claims that a procedural irregularity occurred because the defendant asserted both in its trial brief and at oral argument before the trial court that Cihocki did not have a power of attorney. We do not agree with the plaintiff that this is a procedural irregularity.

"An appeal from an administrative tribunal should ordinarily be determined upon the record of that tribunal, and only when that record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason requires it, should the court hear the evidence." (Internal quotation marks omitted.) *Salmon* v. *Dept. of Public Health & Addiction Services*, 58 Conn. App. 642, 664, 754 A.2d 828 (2000), rev'd on other grounds, 259 Conn. 288, 788 A.2d 1199 (2002).

The determination of whether the court improperly refused to consider Cihocki's affidavit is made under the abuse of discretion standard of review. "The scope of review by this court on a claim that the trial court abused its discretion is well settled. [E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) Id.

First, we note that the plaintiff mistakenly bases his claim on a procedural irregularity that allegedly occurred before the court, whereas Practice Book § 2-38 (d) limits the review of alleged procedural irregularities to instances occurring before the defendant or the reviewing committee. Second, we note that even if the statement in the defendant's trial brief and at argument—that Cihocki did not have a power of attorney—had been made before the reviewing committee or during the defendant's review of the committee's decision, that statement does not amount to a procedural irregularity. In this instance, the defendant's statement related to a lack of evidence, rather than to a finding of the court. Stressing a lack of evidence that points out a weakness in the opposing party's argument is not a procedural irregularity.[11]

Absent a showing of a procedural irregularity, the court was not obliged to accept the plaintiff's submission of supplementary materials after oral argument. Instead, the court properly refused to consider the affidavit because it was not part of the record and not a procedural irregularity. On the basis of the evidence and findings before us, we conclude that the court did not abuse its discretion in refusing to consider the affidavit.

## III

The plaintiff's third claim is that the court improperly determined that scienter was not necessary to constitute a violation of rules 1.2 (a) and 1.4 (a) of the Rules of Professional Conduct. In *Statewide Grievance Com-*

---

[11] The plaintiff also claims that because the defendant did not file an objection to his attempted submission of supplementary material, he was denied his right to be heard. On the contrary, our rules of practice do not state that a party is obligated to file an objection to the submission of supplementary material. The court properly refused to consider the affidavit in making its decision, irrespective of whether the defendant filed an objection.

*mittee* v. *Presnick*, 18 Conn. App. 316, 322, 559 A.2d 220 (1989), this court observed that a finding of bad faith or corrupt motive is not necessary to constitute a professional misconduct violation. Indeed, "[i]t is not a defense to an ethical violation that the attorney did not act in bad faith or intend to violate the code . . . ." (Citation omitted; internal quotation marks omitted.) *Daniels* v. *Statewide Grievance Committee*, 72 Conn. App. 203, 211, 804 A.2d 1027 (2002).

The fact that the plaintiff may not have acted in bad faith plays no part in determining whether he violated rules 1.2 (a) and 1.4 (a) of the Rules of Professional Conduct. Therefore, regardless of the plaintiff's scienter at the time that he worked on Adams' bankruptcy, substantial evidence exists in the record that the plaintiff violated the two rules.

The judgment is affirmed.

In this opinion the other judges concurred.