******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FOUNTAIN OF YOUTH CHURCH, INC. *v.*
# FRANKLIN L. FOUNTAIN ET AL.
## (AC 46249)

Clark, Seeley and Palmer, Js.

*Syllabus*

The plaintiff church appealed to this court from the judgment of the trial court granting the motion by the defendants, F and F Co., to dismiss its action alleging fraud, constructive trust, conversion, and statutory theft. In its operative complaint, the church alleged that it owned certain real property and that F had been named pastor of the church. More than one year after his appointment, F advised the church's board of directors at a board meeting that the church owed taxes and that the church should change its legal name and business structure in order to avoid that tax obligation. The church alleged that, unbeknownst to it and its board, F had incorporated F Co. prior to the board meeting, that F knew that the church, which was a tax-exempt entity, did not in fact owe any taxes despite his representations to the contrary, that F, in his purported role as president of the church, had filed documents dissolving the church as a corporation without receiving authorization from the church's board and that, without the knowledge of the church or its board, F signed and filed documents purporting to transfer the church's properties to F Co. and removed money from the church's bank accounts. The defendants filed a motion to dismiss the church's complaint, arguing, inter alia, that D and J, the persons who purported to have commenced the present action in the name of church, were not authorized to initiate litigation on behalf of the church and, therefore, the church lacked standing to bring the present action and the court consequently lacked subject matter jurisdiction. In support of their motion to dismiss, the defendants filed, inter alia, an affidavit of F and deposition testimony of D and J. The church filed an objection to the defendants' motion to dismiss, arguing, inter alia, that, contrary to the defendants' contentions, the church was not properly dissolved by a duly authorized action of its board of directors and that, because the church had not been properly dissolved, the defendants could not rely upon their improper actions to deprive the church of its ability to pursue its claims that stemmed from those very actions. The church further argued that J, who the church claimed was the vice president of the church prior to the church's dissolution, and D, who the church claimed was a member of the church's deacon board, were authorized to bring the present action in the church's name because they more fairly and accurately represented the interests of the church. At the hearing on the defendants' motion to dismiss, the court's principal concern was that, even if the court were to assume that the dissolution of the church was improper, there were no indicia

of authorization for D or J to bring the action in the name of the church. The court subsequently granted the defendants' motion to dismiss and overruled the church's objection to the motion. In the court's written order that followed, the court explained that there was no written authorization for the church to initiate the present action, nor was the action brought by any member of the religious congregation in a derivative capacity. Accordingly, the court concluded that it lacked subject matter jurisdiction over the matter and dismissed the action. The church subsequently filed a motion for reargument and reconsideration in which it argued, inter alia, that the court's ruling ignored that F's wrongful actions were the reason that no written authorization existed and that the defendants should not be permitted to benefit from those wrongful actions. One day after filing its motion for reargument and reconsideration, the church filed a supplement to its motion, which included a document dated May 4, 2019, purporting to be a resolution authorizing the present action against the defendants. The defendants objected and argued that the church's filings called into question the credibility of the claims asserted in both the church's motion for reargument and reconsideration and the supplemental filing in support of that motion. The defendants noted that the church had conceded in its motion for reargument and reconsideration that there had been no authorization because F's actions purportedly made that impossible but in its supplemental filing had purported to submit a written resolution from May 4, 2019, authorizing the present action. The defendants further noted that J had testified during a deposition in October, 2019, that the church's board never voted to commence a lawsuit against the defendants or to authorize any person to act on the church's behalf against the defendants. At the hearing on the motion for reargument and reconsideration, the court expressed concerns with the purported May 4, 2019 resolution and concluded that the purported authorization was not credible and, accordingly, denied the church's motion for reconsideration. *Held* that the church could not prevail on its claim that the trial court improperly dismissed its action against the defendants for lack of standing: the defendants' motion to dismiss and the affidavits and evidence in support of it conclusively established that the church lacked the authority to sue the defendants, as F averred that the church's board never authorized any individual to bring the present lawsuit, D testified in his deposition that he did not attend any meeting about bringing the present action, and J testified in his deposition that he did not conduct any board meetings after the church was purportedly dissolved, that he was not aware of any votes or minutes by the board that were taken in relation to the church after the purported dissolution, and that the board never took any vote in relation to instituting the present lawsuit; moreover, the church's opposition to the motion to dismiss failed to overcome the defendants' evidence establishing that no person was authorized to bring the present action in the name of the church, as the affidavits and

documents attached to the church's objection to the motion to dismiss, which aimed to show that F improperly dissolved the church and subsequently transferred property to F Co., did not demonstrate that the church was authorized to commence the present action against the defendants and, even if this court were to assume arguendo that the church was improperly dissolved by F, the church's objection to the motion to dismiss and the evidence submitted in support of that objection failed to demonstrate that any individual, including J or D, had the authority to maintain the present action in the church's name, either as a result of internal church proceedings or by law; furthermore, although the church contended on appeal to this court that the May 4, 2019 document that it submitted was evidence that the church was authorized to bring the present action against the defendants, the trial court properly concluded that the document had significant shortcomings and therefore was entitled to no weight, as the May 4, 2019 document did not specifically authorize the present lawsuit, the church failed to explain why an unquantified number of members of the church, as opposed to a majority of a quorum of the board of directors of the church, were legally empowered to authorize the church to commence a lawsuit, the document stated that the meeting was presided over by J and D but recorded no roll call, no number of members present, no identity of a movant pressing a motion, and no identity of a second to the motion, the document purported to be from a meeting that took place months after the commencement of the present litigation with no indication that any purported business conducted that day was to apply retroactively, and J testified at a deposition in October, 2019, many months after the purported May 4, 2019 members meeting took place, that no vote to initiate the present action had been taken or recorded, which further called into question the veracity of the document submitted by the church; additionally, although the church argued in its appellate brief that a corporation acts through its officers, suggesting that J, in his purported role as vice president, or D, as a purported member of the deacon board, could authorize the church to commence the present action, the church failed to demonstrate that J or D was authorized to commence the present action in the name of the church and, in fact, most courts have held that a vice president does not have power to act on behalf of the corporation in highly important and unusual transactions in the absence of specific authorization in the bylaws or a resolution of the board of directors.

Argued January 11—officially released June 4, 2024

*Procedural History*

Action to recover damages for, inter alia, fraud, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Hon. Dale*

*W. Radcliffe*, judge trial referee, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed*.

*Ryan P. Driscoll*, for the appellant (plaintiff).

*Eroll V. Skyers*, for the appellees (defendants).

*Opinion*

CLARK, J. This appeal arises from an action commenced by Fountain of Youth Church, Inc. (Church), against the defendants, Franklin L. Fountain (Fountain) and Fountain of Youth Cathedral, Inc. (Cathedral), asserting claims of fraud, constructive trust, conversion, and statutory theft. The trial court granted the defendants' motion to dismiss, concluding that the Church lacked standing because it failed to demonstrate that it was acting pursuant to a valid authorization when it initiated the present action against the defendants. On appeal, the Church claims that the court improperly concluded that it was not authorized to initiate the present action. We disagree and affirm the judgment of the trial court.

The record reveals the following procedural history. On October 23, 2018, the Church commenced the present action against the defendants. In its operative complaint, the Church alleged that it is a Connecticut corporation and owns real property located at 314-316 Madison Avenue and 324 Madison Avenue in Bridgeport (properties). The complaint alleges that, in or about November, 2013, Fountain was named pastor of the Church. In January, 2015, the Church's board of directors held a meeting, at which time Fountain advised the board that the Church "owed taxes" and that the Church should change its legal name and business structure in order to avoid that tax obligation. The Church alleged that, unbeknownst to it and its board, Fountain had already incorporated another entity, the Cathedral,

on October 17, 2014. The Church further alleged that, upon information and belief, Fountain knew that the Church, which is a tax-exempt entity, did not in fact owe any taxes despite his representations to the contrary.

The complaint alleges that, on or about March 5, 2015, Fountain, in his purported role as president of the Church, filed documents with the Secretary of the State's office dissolving the Church as a corporation without receiving authorization from the Church's board to take steps to dissolve the Church. The Church further alleges that Fountain, without the knowledge of the Church or its board, then signed and filed documents purporting to transfer the Church's properties to the Cathedral and removed money from the Church's bank accounts. The Church alleges that this was done for Fountain's personal gain and/or for the gain of the Cathedral, all to the Church's detriment. It further alleges that the Cathedral knew Fountain had no authority to transfer the funds in question and that it willingly accepted them into its bank account and further assumed and exercised ownership rights over the Church's property.

On December 11, 2018, the Church filed a motion for a temporary injunction seeking to prohibit the defendants from disposing of the properties and the personal property at those locations, arguing, inter alia, that Fountain, on behalf of the Cathedral, had listed the properties for sale with Colonial Realty and that it appeared that tangible property had been or may be in the process of being moved out of the buildings located at the properties. The Church argued that there was probable cause that judgment would be rendered for the Church and that irreparable harm would result if the injunction was not entered. In support of the Church's motion, the Church provided an affidavit by Donald Fountain attesting to many of the facts alleged in its motion. In an order dated December 20, 2018, the court, *Bellis, J.,*

with agreement of the parties, ordered the defendants not to transfer, encumber, or dispose of its assets until further order of the court, except to the extent ordinary business expenses must be paid.

On February 13, 2020, the defendants filed a motion to dismiss the Church's complaint, arguing that the Church could not demonstrate that it was authorized to commence the present action and, therefore, lacked standing. Specifically, they argued that Donald Fountain and James Fountain, the persons who purport to have commenced the action in the name of Church, were not authorized to initiate litigation against Fountain or the Cathedral on behalf of the Church. The defendants argued that the Church's board voted unanimously to dissolve the Church as a religious corporation and, after it was dissolved, the Church ceased all activities as a religious corporation. The defendants further argued that the Church's name had been unjustly misappropriated and misused in a manner that falsely portrayed it as an aggrieved plaintiff against the defendants.

In support of their motion to dismiss, the defendants filed a memorandum of law and exhibits, which included an affidavit of Fountain and deposition testimony of Donald Fountain and James Fountain. Fountain averred that during his tenure as pastor of the Church, the Church had a board of directors that made decisions regarding the actions taken by the Church as a corporate body. He also averred that he was the chairman of the Church's board of directors and that the Church never authorized any individual to bring a lawsuit in the courts of Connecticut or in any other jurisdiction on behalf of the Church. He further averred that Donald Fountain and James Fountain did not have authorization to bring the present civil action against him or the Cathedral on behalf of the Church and that they never had the unilateral authority to represent, speak for, or act on behalf of the Church. Accordingly,

the defendants argued that the Church lacked standing to bring the present action and that the court consequently lacked subject matter jurisdiction.

On April 21, 2020, the Church filed an objection to the defendants' motion to dismiss. It argued that, contrary to the defendants' contentions, the Church was not properly dissolved by a duly authorized action of its board of directors. It argued that Fountain, using a board of directors handpicked by him, attempted to dissolve the Church but failed to follow the protocols required by law. The Church claimed in its objection that, despite failing to follow the procedure required by law, Fountain nevertheless advised the Secretary of the State in filings that the Church had been dissolved. The Church also claimed that Fountain had transferred some, but not all, of the Church's assets to the Cathedral, again without a proper board vote that was required under state law. In addition, the Church claimed that Fountain's purported dissolution of the Church caused chaos and confusion among the Church's members, leading many members to leave.

The Church further claimed in its objection that, because the Church was not properly dissolved, the defendants cannot rely upon their improper actions to deprive the Church of its ability to pursue its claims that stem from those very actions. The Church argued that James Fountain, who the Church claimed was the vice president of the Church prior to the Church's dissolution, and Donald Fountain, who the Church claimed was a member of the Church's deacon board, were authorized to bring the present action in the Church's name because they more fairly and accurately represented the interests of the Church. The Church's objection indicated that James Fountain is the younger brother of Fountain, and Donald Fountain is the uncle of Fountain. In support of the Church's objection, the

Church attached numerous exhibits, including deposition testimony of Donald Fountain, deposition testimony and an affidavit of Fountain, printouts from the Secretary of the State's website, a document purporting to be minutes of a meeting at which the board had purportedly dissolved the Church and authorized the transfer of its assets, and a document purporting to be the Church's constitution and bylaws.

On November 2, 2022, the court, *Hon. Dale W. Radcliffe*, judge trial referee, held a hearing on the defendants' motion to dismiss. The court's principal concern during the hearing was that there were no indicia of authorization for Donald Fountain or James Fountain to bring the action in the name of the Church, even if the court were to assume that the dissolution of the Church was improper. During a colloquy with the Church's counsel, the court noted that a corporation can only act through its authorized agents and asked the Church's counsel if there was "a written authorization allowing anyone to act on behalf of the [Church] and bring this action." The Church's counsel responded: "I would concede there is no specific written authorization saying that James or Donald Fountain can bring an action." Counsel argued, however, that James Fountain's position as vice president of the Church gave him the ability to institute the action in the Church's name. In response, the court asked counsel if "there [was] any statute that gives an individual as an officer, in this case [James] Fountain as the vice president, without authorization the ability to bring an action in the name of the Church or any provision of the Church bylaws that would allow someone who is an officer." Counsel for the Church stated: "Your Honor, I have to admit I don't have anything handy that would support that." The court stated: "Well, I'm just looking . . . for anything. . . . I'm just asking if there is a provision of the bylaws, is there a statute, or is there a resolution of the church council.

Anything of that nature that allows this particular suit." Counsel for the Church again responded: "Your Honor, I would say that I don't have any written authorization . . . in the form of a resolution that would authorize that."

At the conclusion of the hearing, the court granted the defendants' motion to dismiss and overruled the Church's objection to the motion. In the court's written order that followed, the court explained that there was no written authorization authorizing the Church to initiate the present action, nor was the action brought by any member of the religious congregation in a derivative capacity. Accordingly, the court concluded that it lacked subject matter jurisdiction over the matter and dismissed the action.

On November 14, 2022, the Church filed a motion for reargument and reconsideration in which it argued that James Fountain was authorized to act due to the void in leadership that had been caused by Fountain's alleged improper actions. The Church argued that the court's ruling "ignore[d] that [Fountain's] wrongful actions [were] the exact reason that no written authorization for the instant action exists" and that the defendant should not be permitted to benefit from those wrongful actions. The Church also argued in a conclusory manner that the court's decision ignored the fact that James Fountain specifically authorized the current civil action.

On November 15, 2022, one day after filing its motion for reargument and reconsideration, the Church filed a "supplement" to its motion, which included an exhibit purporting to be "a resolution and written document dated May 4, 2019, authorizing the instant action against the defendants . . . ." The supplemental filing stated that the document "should satisfy the court that there was written approval for the instant action and that it may have been overlooked previously."

On November 28, 2022, the defendants filed an objection to both the motion for reargument and reconsideration and to the supplemental filing in support of that motion. The defendants argued that the Church's filings called into question the credibility of the claims asserted in both the Church's motion for reargument and reconsideration and the supplemental filing in support of that motion. The defendants noted that the Church had conceded in its motion for reargument and reconsideration that there had been no authorization because Fountain's actions purportedly made that impossible and that a written resolution should not be a prerequisite to a civil action but, in its supplemental filing, had purported to submit a written resolution from May 4, 2019, authorizing the present action. The defendants further noted that, although "the written resolution purports to authorize the hiring of legal counsel [and] the placement of a lis pendens upon the subject properties and purports to record the result of a vote ousting its pastor [Fountain]," and the Church appeared to argue that this constituted authorization to commence the present action, James Fountain had previously testified during a deposition that the Church's board never voted to commence a lawsuit against the defendants or to authorize any person to act on the Church's behalf against the defendants. The defendants attached that deposition testimony to their objection.

The defendants further argued that the eleventh hour nature of the Church's supplemental filing alone cast suspicion on the authenticity of the underlying document purporting to authorize the Church to commence the action and that the document itself included many shortcomings. Specifically, the defendants argued that the document "records no roll call, no number of members present, no identity of a movant pressing a motion, and no identity of a second to the motion. The document fails to declare that any authority was granted to any

person to proceed with a lawsuit, fails to authorize the placing of a lis pendens, and fails to authorize any person to provide an affidavit in support of the pending litigation." The defendants also argued that, "most glaringly, the document is dated seven months after the commencement of the lawsuit with no mention of its retroactive effect . . . ." Accordingly, the defendants argued that the Church's motion for reargument and reconsideration should be denied.

On January 25, 2023, the court held a hearing on the motion for reargument and reconsideration. The Church's counsel argued that "there is the document dated May 4, 2019, in which the individual named there acted to authorize [a law firm] to act as their attorneys in connection with this matter." Counsel indicated that his argument was twofold: "[E]ither it is an authorized act . . . but if it's not, our argument is that equity dictates that there should be some individual from this entity that was, in our estimation, wrongly dissolved and improperly transferred assets from to act on its behalf to protect its interests."

The court expressed concerns with the May 4, 2019 document. The court observed that the document "says that minutes were recorded by acting secretary Sister Annie Moore, but there's no signature here by her. It says that a meeting was held, but it doesn't give the names of the individuals who attended. It says it was presided over by Deacon James Fountain and Deacon Donald Fountain. It doesn't indicate anyone else who attended. And essentially, it was dated May 4, 2019, which is after the return date on this particular matter. So, I don't know how an unsigned document, which doesn't identify the people present, isn't signed by the recording secretary, talks about motions, but doesn't give the name of the individual making the motion or seconding the motion, I don't know how that can be

even authenticated." The court concluded that the pur-
ported authorization was not credible. It accordingly
denied the Church's motion for reconsideration. This
appeal followed.

We begin our analysis by setting forth the applicable
standard of review. "A motion to dismiss tests, inter
alia, whether, on the face of the record, the court is
without jurisdiction. . . . [O]ur review of the court's
ultimate legal conclusion and resulting [determination]
of the motion to dismiss will be de novo." (Internal
quotation marks omitted.) *Manning* v. *Feltman*, 149
Conn. App. 224, 230, 91 A.3d 466 (2014). "In undertaking
this review, we are mindful of the well established
notion that, in determining whether a court has subject
matter jurisdiction, every presumption favoring juris-
diction should be indulged." (Internal quotation marks
omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 521, 98 A.3d
55 (2014).

Our courts have acknowledged that "[t]rial courts
addressing motions to dismiss for lack of subject matter
jurisdiction . . . may encounter different situations,
depending on the status of the record in the case."
(Internal quotation marks omitted.) *Angersola* v. *Radio-
logic Associates of Middletown, P.C.*, 330 Conn. 251,
274, 193 A.3d 520 (2018). "[L]ack of subject matter
jurisdiction may be found in any one of three instances:
(1) the complaint alone; (2) the complaint supple-
mented by undisputed facts evidenced in the record;
or (3) the complaint supplemented by undisputed facts
plus the court's resolution of disputed facts. . . . Dif-
ferent rules and procedures will apply, depending on
the state of the record at the time the motion is filed.
When a trial court decides a jurisdictional question
raised by a pretrial motion to dismiss on the basis of
the complaint alone, it must consider the allegations
of the complaint in their most favorable light. . . . In
this regard, a court must take the facts to be those

alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . [or] other types of undisputed evidence . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009).

On appeal, the Church claims that the court erred in dismissing its action against the defendants for a lack of standing. Specifically, the Church claims that the court improperly concluded that there was no authorization for it to initiate the present action against the defendants. In the Church's view, the May 4, 2019 document that it submitted as evidence demonstrated authorization for the Church to bring the present action against the defendants. The Church also argues that, to the extent this court does not accept the May 4, 2019 document as evidence of authorization to act, the evidence nevertheless shows that the Church's remaining officers and director had the ability to authorize action on the Church's behalf because any inability to demonstrate authorization was caused by the chaos and confusion resulting from Fountain's wrongful conduct. The

Church maintains that the defendants should not be permitted to benefit from their improper actions to deprive the Church of its ability to pursue its claims that stem from those very improper actions. We are not persuaded.

"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction." *Unisys Corp.* v. *Dept. of Labor*, 220 Conn. 689, 693, 600 A.2d 1019 (1991). "Standing is the legal right to set judicial machinery in motion." (Internal quotation marks omitted.) *Nonhuman Rights Project, Inc.* v. *R.W. Commerford & Sons, Inc.*, 197 Conn. App. 353, 360, 231 A.3d 1171, cert. denied, 335 Conn. 929, 235 A.3d 525 (2020). "One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 316, 138 A.3d 257 (2016). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 112, 967 A.2d 495 (2009).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 471, 239 A.3d 272 (2020).

In order to fulfill these goals, our Supreme Court has explained that the standing doctrine requires a plaintiff

to demonstrate two facts. "First, the complaining party must be a proper party to request adjudication of the issues. . . . Second, the person or persons who prosecute the claim on behalf of the complaining party must have authority to represent the party." (Citation omitted; internal quotation marks omitted.) *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, 241 Conn. 546, 553, 698 A.2d 245 (1997); see also *Fischer* v. *People's United Bank, N.A.*, 216 Conn. App. 426, 440, 285 A.3d 421 (2022), cert. denied, 346 Conn. 904, 287 A.3d 136 (2023).

"To demonstrate authority to sue . . . it is not enough for a party merely to show a colorable claim to such authority. Rather, the party whose authority is challenged has the burden of convincing the court that the authority exists." (Internal quotation marks omitted.) *Schaghticoke Tribal Nation* v. *Harrison*, 264 Conn. 829, 832–33, 826 A.2d 1102 (2003). "The burden of proof for questions of authority is higher than that for questions of propriety because the former questions are more important. Lawsuits must be authorized not only to ensure that the litigants fairly and vigorously represent the party's views . . . but also because, if unauthorized lawsuits were allowed to proceed, future rights of the named parties might be severely impaired." (Citation omitted; internal quotation marks omitted.) *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, 231 Conn. 563, 572–73, 651 A.2d 1246 (1995).

In the present case, the defendants' motion to dismiss argued that the Church lacked standing because it could not demonstrate that it was authorized to commence the present action against the defendants. Specifically, the defendants argued that no individual, including Donald Fountain or James Fountain, had authorization from the Church's board of directors to bring the present action in the name of the Church. The defendants'

motion to dismiss therefore properly called into question the jurisdiction of the trial court. In the face of this challenge, the Church had the burden of convincing the court that it was authorized to initiate this action. See, e.g., *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, supra, 241 Conn. 554 ("the party whose authority is challenged has the burden of convincing the court that the authority exists" (internal quotation marks omitted)). We conclude that it failed to satisfy that burden.

The defendants' motion to dismiss and the affidavits and evidence in support of it conclusively established that the Church lacked the authority to sue the defendants. In particular, Fountain averred that he was the chairman of the board of the Church, that the board never authorized any individual to bring the present lawsuit, and that Donald Fountain and James Fountain did not have the authority to bring the present action in the name of the Church. Additionally, the defendants submitted deposition testimony of Donald Fountain in which he testified that he did not attend any meeting about bringing the present action and that the defendants' counsel would have to talk to James Fountain about that. Donald Fountain testified that James Fountain, as vice president of the board, empowered him to sign an affidavit in support of the application for a temporary injunction but that he could not say whether a meeting of the board was held or that a resolution authorizing his conduct was made.

The defendants also submitted deposition testimony of James Fountain. James Fountain testified that he did not conduct any board meetings after the Church was purportedly dissolved and that he was not aware of any votes or minutes by the board that were taken in relation to the Church after the purported dissolution. He also testified that the board never took any vote in relation

to instituting the present lawsuit. He did testify, however, that a meeting of members of the Church was held on May 4, 2019.

The Church's opposition to the motion to dismiss failed to overcome the defendants' evidence establishing that no person was authorized to bring the present action in the name of the Church. Although the Church attached various affidavits and documents to its objection to the motion to dismiss, which aimed to show that Fountain improperly dissolved the Church and subsequently transferred property to the Cathedral, the affidavits and other documents did not demonstrate that the Church was authorized to commence the present action against the defendants. Indeed, even if this court assumes arguendo that the Church was improperly dissolved by Fountain (as the Church contends and the defendants dispute), the Church's objection to the motion to dismiss and the evidence submitted in support of that objection failed to demonstrate that any individual, including James Fountain or Donald Fountain, had the authority to maintain the present action in the Church's name. On the contrary, the Church's counsel conceded at argument on the motion to dismiss before the trial court that "there is no specific written authorization saying that James or Donald Fountain can bring an action." Counsel further conceded that there was no statute or bylaw that gave James Fountain, as the purported vice president of the board of directors, the authority to sue in the name of the Church.

Although the Church now contends on appeal that the May 4, 2019 document that it submitted (purporting to be minutes of a meeting of members of the Church) is evidence that the Church was authorized to bring the present action against the defendants, the court properly concluded that the document had significant shortcomings and therefore was entitled to no weight. Aside from the fact that the May 4, 2019 document

does not specifically authorize the present lawsuit, the Church also fails to explain why an unquantified number of members of the church, as opposed to a majority of a quorum of the board of directors of the Church, are legally empowered to authorize the Church to commence a lawsuit. Furthermore, as the trial court noted, the document states that the meeting was presided over by James Fountain and Donald Fountain but records no roll call, no number of members present, no identity of a movant pressing a motion, and no identity of a second to the motion. The document also purports to be from a meeting that took place months *after* the commencement of the present litigation with no indication that any purported business conducted that day was to apply retroactively. What is more, James Fountain testified at a deposition on October 17, 2019— many months after the purported May 4, 2019 members meeting took place—that no vote to initiate the present action had been taken or recorded. This further called into question the veracity of the document submitted by the Church.

The Church argues that, to the extent this court does not accept the May 4, 2019 document as evidence of authorization to act, this court should conclude that there is ample evidence that the Church's remaining officers and directors were authorized to commence the present action on its behalf to recoup the moneys and the property taken from it. The Church argues in its appellate brief that a corporation acts through its officers, suggesting that James Fountain, in his purported role as vice president, or Donald Fountain, as a purported member of the deacon board, could authorize the Church to commence the present action. While there is no dispute that a corporation, in general, acts through its officers and agents; see, e.g., *Maharishi School of Vedic Sciences, Inc.* (*Connecticut*) v. *Connecticut Constitution Associates Ltd. Partnership*, 260

Conn. 598, 606, 799 A.2d 1027 (2002); the Church failed to demonstrate that James Fountain or Donald Fountain was authorized to commence the present action in the name of the Church. Indeed, "[a] corporation's vice president is generally held to have no authority merely by virtue of the office to dispose of the corporation's property or to bind the corporation by notes or other contracts." 1 J. Cox & T. Hazen, Treatise on the Law of Corporations (3d Ed. 2023) § 8:8; see also *Hudson United Bank* v. *Cinnamon Ridge Corp.*, 81 Conn. App. 557, 573, 845 A.2d 417 (2004) ("[g]enerally, a corporate vice president does not have the inherent authority to bind the corporation to notes or to contracts"). Most courts agree that "a vice president does not have power to act on behalf of the corporation in highly important and unusual transactions in the absence of specific authorization in the bylaws or a resolution of the board of directors." 1 J. Cox & T. Hazen, supra, § 8:8.

In a final attempt to establish standing, the Church contends that this is a "novel scenario where the defendant improperly dissolves a corporation, improperly transfers moneys and property in connection with the improper dissolution and then attempts to utilize that improper dissolution against the plaintiff to argue that because it was, in effect, dissolved by the defendants' wrongful actions it no longer has the standing. Common sense, equity and justice dictate that this cannot be the case."

Although we acknowledge that the Church alleges that there was some confusion following the dissolution (or purported dissolution) of the Church, general pronouncements that the Church has standing or that Donald Fountain and James Fountain had the legal authority to cause the Church to commence suit, without any evidence in support of those pronouncements, are insufficient to establish that the Church was authorized to initiate the present lawsuit. Because the Church

failed to satisfy its burden of convincing the court that it was authorized to commence this action, we conclude that the trial court properly granted the defendants' motion to dismiss for lack of standing.

The judgment is affirmed.

In this opinion the other judges concurred.